STARK, P.J.
*165 *496 ¶ 1 This appeal involves a dispute between the Town of Rib Mountain (Rib Mountain) and *497 Marathon County (the County) regarding the County's plan to implement a uniform addressing system in all unincorporated areas of the County. Rib Mountain argues the County exceeded its statutory authority because WIS. STAT. § 59.54(4) and (4m) (2015-16)[1] permit the County to implement such a system only in unincorporated areas that also qualify as "rural." We agree with Rib Mountain's interpretation of § 59.54(4) and (4m). We therefore reverse the circuit court's judgment denying Rib Mountain's claims for declaratory and injunctive relief and remand for further proceedings on those claims.
BACKGROUND
¶ 2 On February 16, 2016, the County enacted Ordinance #O-7-16 (the Ordinance), mandating the creation of a uniform addressing system in the County. According to the Ordinance, the County's intent in implementing this system was "to assign each location a unique address which will aid emergency personal [sic] in providing fire protection, emergency medical services, and law enforcement services; and meet other general locational needs such as delivery services of the public." The Ordinance stated the uniform addressing system would apply "to each road, home, business, farm, structure, or other establishments [sic] in the unincorporated areas of the County."[2] Towns are unincorporated under Wisconsin law, unlike villages and cities. See, e.g. , WIS. STAT. § 60.05 (discussing the *498 "organization" of towns in special cases); WIS. STAT. §§ 66.0201 - 66.0213 (discussing the "incorporation" of villages and cities).
¶ 3 Consistent with the authority granted by the Ordinance, the County published a draft Uniform Addressing Implementation Plan (the Plan) on January 11, 2017. The Plan required all towns in the County to participate in the County's uniform addressing system. It asserted the County had "jurisdiction over addressing in unincorporated areas based on [ WIS. STAT. §] 59.54(4) and (4m)." Those subsections provide:
(4) RURAL NAMING OR NUMBERING SYSTEM . The board[3 ] may establish a rural naming or numbering system in towns for the purpose of aiding in fire protection, emergency services, and civil defense, and appropriate and expend money therefor, under which:
(a) Each rural road, home, business, farm or other establishment, may be assigned a name or number.
(b) The names or numbers may be displayed on uniform signs posted on rural roads and intersections, and at each *166 home, business, farm or other establishment.
(4m) RURAL NAMING OR NUMBERING SYSTEM; TOWN COOPERATION . The rural naming or numbering system under sub. (4) may be carried out in cooperation with any town or towns in the county.
Sec. 59.54(4) and (4m).
¶ 4 The County subsequently notified Rib Mountain-a town located in the County-that it would be required to rename 61 of its 202 roads. In *499 response, Rib Mountain filed the instant lawsuit against the County, seeking declaratory and injunctive relief. Rib Mountain argued the County's authority to implement a naming or numbering system under WIS. STAT. § 59.54(4) and (4m) extended only to "rural" areas in towns, rather than to all unincorporated areas of the County. Rib Mountain contended the County had "failed to consider" whether the roads affected by its Plan were in rural areas and therefore fell within the County's "statutory authority to implement a naming and numbering system upon." Rib Mountain further alleged that some of the roads it would be required to rename under the County's Plan had previously been "identified ... as roads located in urban areas" by either the Marathon County Metropolitan Planning Commission or the United States Census Bureau.[4] (Emphasis omitted.)
¶ 5 On August 31, 2017, following briefing by Rib Mountain and the County, the circuit court issued a decision denying Rib Mountain's claims for declaratory and injunctive relief. The court agreed with the County that the term "rural" in WIS. STAT. § 59.54(4) and (4m) meant "unincorporated" and was not "intended as a way of excluding urban areas." As support for that conclusion, the court cited the plain language *500 and history of § 59.54(4) and (4m), along with this court's decision in Liberty Grove Town Board v. Door County Board of Supervisors , 2005 WI App 166, 284 Wis. 2d 814, 702 N.W.2d 33. The court therefore declared that the County's Plan and Ordinance "[did] not violate § 59.54(4) by including urbanized parts of Rib Mountain or any other town." Rib Mountain now appeals.
STANDARD OF REVIEW
¶ 6 This appeal requires us to interpret WIS. STAT. § 59.54(4) and (4m). Statutory interpretation presents a question of law that we review independently. Wisconsin Prof'l Police Ass'n v. WERC , 2013 WI App 145, ¶ 11, 352 Wis. 2d 218, 841 N.W.2d 839.
¶ 7 When interpreting a statute, our objective "is to determine what the statute means so that it may be given its full, proper, and intended effect." State ex rel. Kalal v. Circuit Court for Dane Cty. , 2004 WI 58, ¶ 44, 271 Wis. 2d 633, 681 N.W.2d 110. Our analysis begins with the plain language of the statute. Id. , ¶ 45. "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." Id. In addition, statutory language must be interpreted "in the context *167 in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." Id. , ¶ 46. Where possible, we must read statutory language so as to "give reasonable effect to every word, in order to avoid surplusage." Id. *501 ¶ 8 We are not at liberty to disregard a statute's plain, clear words. Id. Consequently, if the analytical process described above "yields a plain, clear statutory meaning, then there is no ambiguity, and the statute is applied according to this ascertainment of its meaning." Id. (quoting Bruno v. Milwaukee Cty. , 2003 WI 28, ¶ 20, 260 Wis. 2d 633, 660 N.W.2d 656 ). However, if the statute is ambiguous-that is, reasonably susceptible to more than one interpretation-we examine extrinsic sources, such as legislative history, to ascertain the legislature's intent. Id. , ¶¶ 47, 50-51.
DISCUSSION
¶ 9 As an initial matter, the parties dispute whether the word "rural" in WIS. STAT. § 59.54(4) and (4m) actually limits a county's authority to implement a uniform addressing system. The County cites Liberty Grove , in which we stated the "only condition" on a county's authority to implement a road naming system under § 59.54(4) and (4m)"is that [the system] be related to fire protection, emergency services or civil defense." Liberty Grove , 284 Wis. 2d 814, ¶ 13, 702 N.W.2d 33. The County argues this statement shows that the word "rural" in § 59.54(4) and (4m) does not restrict a county's authority to implement a road naming or numbering system.
¶ 10 The County's reliance on Liberty Grove is misplaced. The issue in that case was whether a town had exclusive authority to name roads within its jurisdiction under WIS. STAT. § 60.23(17) (2003-04) and WIS. STAT. § 81.01(11) (2001-02), or whether the town's authority was instead subject to a county's power to *502 rename roads under WIS. STAT. § 59.54(4) and (4m) (2003-04).[5] See Liberty Grove , 284 Wis. 2d 814, ¶ 7, 702 N.W.2d 33. We concluded:
[A] town has initial authority to name town roads by virtue of WIS. STAT. § 81.01(11). However, the town's authority is subject to the county's discretionary authority, under WIS. STAT. § 59.54(4), to establish a road naming and numbering system for the specific purpose of aiding in fire protection, emergency services and civil defense. A county may cooperate with a town regarding road name changes. See WIS. STAT. § 59.54(4m). Ultimately, however, a county has authority to implement name changes, even if a town does not consent, when the name changes are made under the system pursuant to WIS. STAT. § 59.54.
Liberty Grove , 284 Wis. 2d 814, ¶ 15, 702 N.W.2d 33.
¶ 11 When we stated in Liberty Grove that the "only condition" on a county's authority to rename roads was that its road naming system "be related to fire protection, emergency services or civil defense," we were simply responding to-and rejecting-Liberty Grove's argument that a county could only implement a road naming system under WIS. STAT. § 59.54(4)
*168 and (4m) in cooperation with a town. Liberty Grove , 284 Wis. 2d 814, ¶ 13, 702 N.W.2d 33. We were not asked to address whether the word "rural" in those subsections further limited a county's authority to implement a naming or numbering *503 system. Our decision in Liberty Grove therefore should not be read to foreclose that interpretation.
¶ 12 The County next argues the word "rural" in WIS. STAT. § 59.54(4) and (4m) simply describes the type of naming or numbering system a county may implement and does not limit the locations where such a system can be imposed. Conversely, Rib Mountain argues the legislature's use of the word "rural" in § 59.54(4) and (4m) unambiguously demonstrates that it intended to restrict a county's naming and numbering authority to "rural" areas.
¶ 13 We agree with Rib Mountain. In both WIS. STAT. § 59.54(4) and (4m), the legislature described the naming or numbering system a county could impose as a "rural" naming or numbering system. While the County argues the adjective "rural" merely describes the type of naming or numbering system a county may impose, it does not explain what type of system a "rural" naming or numbering system would be, other than a naming or numbering system that applies in rural areas. The County does not suggest, for instance, that the legislature intended the term "rural" to describe the kinds of names or numbers a county's system may include. We are otherwise unaware of any type of system denominated as rural and, therefore, cannot discern any reasonable interpretation of the phrase "rural naming or numbering system" aside from a naming or numbering system that applies in rural areas. The County's argument therefore fails because, under the relevant statutory language, there is no real distinction between the type of naming or numbering system a county may implement and the locations where it may impose such a system; the two concepts are one and the same under the statute.
*504 ¶ 14 Moreover, in WIS. STAT. § 59.54(4)(a), the legislature expressly specified that a county may assign a name or number to "[e]ach rural road, home, business, farm or other establishment." (Emphasis added.) By using "rural" to modify the types of things a county may name or number, the legislature unambiguously indicated an intent to limit the county's naming and numbering authority to examples of the listed items that are located in rural areas.[6] If the legislature had instead intended to permit a county to name or number any road, home, business, farm or other establishment in a town-whether "rural" or not-it could have simply omitted the word "rural" from § 59.54(4)(a). The legislature did not do so, and we must give effect to that choice when interpreting the statute. See Kalal , 271 Wis. 2d 633, ¶ 46, 681 N.W.2d 110 (where possible, statutory language must be read so as to give reasonable effect to every word); see also Industry to Indus., Inc. v. Hillsman Modular Molding, Inc. , 2002 WI 51, ¶ 19 n.5, 252 Wis. 2d 544, 644 N.W.2d 236 ("We presume that the legislature *169 'carefully and precisely' chooses statutory language to express a desired meaning.").
¶ 15 Having concluded the word "rural" in WIS. STAT. § 59.54(4) and (4m) limits a county's naming and *505 numbering authority to "rural" areas, we must now determine the meaning of the term "rural," as it is used in the relevant subsections. WISCONSIN STAT. ch. 59 does not define the term "rural." As noted above, the circuit court concluded "rural" meant "unincorporated." The court therefore held that § 59.54(4) and (4m) granted the County authority to implement a naming or numbering system in all unincorporated areas of the County-thus, in all areas within towns.
¶ 16 We reject the circuit court's interpretation because it renders the word "rural" in WIS. STAT. § 59.54(4) and (4m) surplusage. See Kalal , 271 Wis. 2d 633, ¶ 46, 681 N.W.2d 110 (stating we interpret statutes, where possible, to avoid surplusage). Subsection (4) grants counties authority to establish "a rural naming or numbering system in towns ," § 59.54(4) (emphasis added), and further provides that, under such a system, "[e]ach rural road, home, business, farm or other establishment, may be assigned a name or number," § 59.54(4)(a) (emphasis added). It is undisputed that all of the land within a town is unincorporated. Thus, without the word "rural," subsec. (4) would grant a county authority to implement a renaming or renumbering system in all unincorporated areas within the county, by virtue of the language permitting a county to establish such a system "in towns." Consequently, if "rural" meant "unincorporated," it would be superfluous, in that it would add nothing to the statute's meaning. When interpreting a statute, we must "assume that the legislature used all the words in a statute for a reason." State v. Matasek , 2014 WI 27, ¶ 18, 353 Wis. 2d 601, 846 N.W.2d 811. Every word that appears in a statute should contribute to the statute's construction. Id.
*506 ¶ 17 For purposes of WIS. STAT. § 59.54(4) and (4m), "rural" must therefore mean something other than "unincorporated." As discussed above, when interpreting a statute, we must give the statute's language its common, ordinary, and accepted meaning. Kalal , 271 Wis. 2d 633, ¶ 45, 681 N.W.2d 110. When a statutory term is undefined, its ordinary and accepted meaning can be established by reference to a recognized dictionary. Door Cty. Highway Dep't v. DILHR , 137 Wis. 2d 280, 293-94, 404 N.W.2d 548 (Ct. App. 1987).
¶ 18 The dictionaries we have consulted generally define the adjective "rural" as describing something that is related to, or characteristic of, the country. For instance, one dictionary defines "rural" as "in, relating to, or characteristic of the countryside rather than the town." Rural , NEW OXFORD AMERICAN DICTIONARY (2001). Another dictionary similarly defines "rural" as "of or relating to the country, country people or life, or agriculture." Rural , WEBSTER'S NEW COLLEGIATE DICTIONARY (1977). A third defines "rural" as "of, relating to, associated with, or typical of the country." Rural , WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1993).
¶ 19 "Country," in turn, is defined by one dictionary as "districts and small settlements outside large towns, cities, or the capital." Country , NEW OXFORD AMERICAN DICTIONARY (2001). Another dictionary states that "country" means both "an indefinite usu[ally] extended expanse of land" and "rural as distinguished from urban areas." Country , WEBSTER'S NEW COLLEGIATE DICTIONARY (1977). A third dictionary similarly defines "country" as both "an expanse of land of undefined but *170 usu[ally] considerable extent" and "rural regions as distinguished from city, town, or other *507 thickly inhabited and built-up areas." Country , WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1993).
¶ 20 Read together, these definitions establish that: (1) the term "rural" is used to describe things that are characteristic of, or related to, the "country"; and (2) the "country" encompasses places that are distinct from "urban" areas-i.e., areas with comparatively higher concentrations of people or buildings. Based on these definitions, we conclude the term "rural" in WIS. STAT. § 54.59(4) and (4m) denotes areas that are not urban.[7] In other words, the term "rural" refers to areas that are comparatively less densely populated by people or buildings, or areas that are characteristic of, or related to, the country.
¶ 21 The County argues our interpretation of WIS. STAT. § 59.54(4) and (4m) is no more than a "mechanistic comparison of words." It contends a plain meaning interpretation of those subsections should be "much more comprehensive than the dissection of word choice by a legislature in 1957." The County asserts our supreme court recently rejected this type of mechanistic "word analysis" in Wisconsin Carry, Inc. v. City of Madison , 2017 WI 19, 373 Wis. 2d 543, 892 N.W.2d 233.
¶ 22 Wisconsin Carry involved a challenge to a rule promulgated by the City of Madison's Transit and Parking Commission, which prohibited passengers *508 from bringing weapons onto city buses. Id. , ¶¶ 1-2. Wisconsin Carry asked the Commission to amend the rule in order to harmonize it with legislation authorizing Wisconsin residents to carry concealed weapons. Id. , ¶ 3. Wisconsin Carry also asserted the Commission lacked authority to enforce the rule based on WIS. STAT. § 66.0409(2), which provides that no "political subdivision" may "enact or enforce an ordinance or adopt a resolution" regulating the possession, bearing, or transportation of a knife or firearm, if the ordinance or resolution is more stringent than a state statute. Wisconsin Carry , 373 Wis. 2d 543, ¶ 3, 892 N.W.2d 233.
¶ 23 On appeal, the City argued the plain language of WIS. STAT. § 66.0409(2) demonstrated that statute was inapplicable because the Commission was not a "political subdivision" and its rule prohibiting weapons was not an "ordinance" or "resolution." Wisconsin Carry , 373 Wis. 2d 543, ¶ 15, 892 N.W.2d 233. In addressing this argument, our supreme court cautioned:
We must, however, keep in mind that this axiom [i.e., the plain meaning rule] does not reduce the judicial function to mechanically comparing the words of a statute to the name given a legislative enactment, or the body enacting it. We are not merely arbiters of word choice. If we were, we would need do nothing more than confirm that "rule" is a word different from "ordinance" and "resolution," and that "commission" is etymologically distinct from "city," "village," "town," and "county."
It is, instead, the "plain meaning" of a statute we must apply. We find that meaning in the statute's text, context, and structure: "[S]tatutory interpretation 'begins with the language of the statute.' ... [It] is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation *171 to the *509 language of surrounding or closely-related statutes...." We examine the statute's contextualized words, put them into operation, and observe the results to ensure we do not arrive at an unreasonable or absurd conclusion.
Id. , ¶¶ 19-20 (citations omitted; alterations in Wisconsin Carry ).
¶ 24 The County argues the above quotation shows that a "plain meaning" analysis of a statute must go beyond a mere mechanistic examination of the legislature's word choices. While we do not dispute that proposition, as a general matter, we agree with Rib Mountain that the statutory language at issue in Wisconsin Carry was "fundamentally different" in character from the language at issue in this case. In Wisconsin Carry , the City asserted the plain language of WIS. STAT. § 66.0409(2) showed that the legislature did not intend that statute to apply to rules, as opposed to ordinances and regulations, because "if the legislature had intended to include 'rules' in the realm of prohibited legislative acts, it would have said so." Wisconsin Carry , 373 Wis. 2d 543, ¶ 45, 892 N.W.2d 233. Our supreme court rejected that argument, explaining the City's interpretation would "require the legislature to list every possible label for a legislative act before we could conclude that its intention was to withdraw from a municipality the authority to regulate a particular subject." Id. , ¶ 46. In addition, the City's argument would "require that the legislature amend the statute every time a municipality conceived of a new label for its legislative acts." Id. The court stated this would result in
law-making as comedy, with a hapless legislature chasing about a wily municipality as it first enacts an *510 ordinance on a forbidden subject, and then a policy, then a rule, then a standard, and on and on until one of them wearies of the pursuit or the other exhausts the thesaurus.
Id.
¶ 25 Our interpretation of the term "rural" in WIS. STAT. § 59.54(4) and (4m) does not lead to the same kind of absurd result that our supreme court cautioned against in Wisconsin Carry . The Wisconsin Carry court was concerned that, if it strictly interpreted the two types of legislative acts listed in WIS. STAT. § 66.0409(2) to exclude all other kinds of legislative acts, political subdivisions could evade the statute's effect simply by relabeling a legislative act as something other than an "ordinance" or "resolution." No such concerns are present in this case. As Rib Mountain notes, when drafting § 59.54(4) and (4m), the legislature was "not tasked with summarizing a category of actions for which there are essentially endless descriptions and in which it is reasonable to assume that a sample was intended to represent all possible descriptions." Wisconsin Carry 's admonition against courts becoming mechanistic arbiters of words in situations where it would be impossible for the legislature to list each pertinent term is therefore inapplicable here.
¶ 26 The County also argues our interpretation of WIS. STAT. § 59.54(4) and (4m) will produce absurd results, in that it will "set the stage for an absurd mosaic of ever-changing address grids" that will transform as populations "ebb and flow," resulting in a "decidedly non-uniform addressing system." However, as Rib Mountain correctly notes, even if we adopted the County's position-i.e., that the County has authority to implement a naming or numbering system in *511 all of its unincorporated territory-the County's system "would still have to provide for roads that travel from towns to non-participating incorporated areas, for incorporated municipalities that expand their borders, for incorporated *172 municipalities that do not opt-in to the system, and for a host of other variables." In other words, even if we accepted the County's interpretation of § 59.54(4) and (4m), the County would still lack the ability to implement a truly "uniform" addressing system on a county-wide basis.[8] We therefore agree with Rib Mountain that permitting the County to implement its uniform addressing system only in "rural" areas in towns, consistent with the plain language of § 59.54(4) and (4m), will not produce absurd results.
¶ 27 In summary, we conclude the word "rural" in WIS. STAT. § 59.54(4) and (4m) restricts a county's authority to implement a naming or numbering system to "rural" areas within towns. We further conclude the statutory term "rural" is not synonymous with "unincorporated," but should instead be interpreted according to its ordinary and accepted meaning. Based on dictionary definitions, we conclude the ordinary and accepted meaning of the term "rural" refers to areas that are characterized by comparatively lower densities of people or buildings, or areas that are characteristic of, or related to, the country-in other words, areas that are not urban.
¶ 28 The County thus exceeded its authority by mandating the implementation of a uniform addressing *512 system in all unincorporated areas of the County, without regard to whether those areas also qualified as "rural." As a result, the circuit court erred by denying Rib Mountain's claims for declaratory and injunctive relief. We therefore reverse the circuit court's judgment and remand for further proceedings on Rib Mountain's claims.[9]
¶ 29 On remand, the County must demonstrate which portions of Rib Mountain, if any, qualify as "rural," according to the plain meaning of that term as set forth above. Rib Mountain suggests that, in order to make this determination, the County should use a map promulgated by the County's Metropolitan Planning Commission, entitled "Wausau MPO Planning Boundary," which labels certain areas of the County as "urban."[10] The County contends such reliance would be improper because the "Wausau MPO Planning Boundary" map is based on data from the United States *513 Census Bureau. The County asserts Rib Mountain has "fail[ed] to acknowledge or account for the warning by the ... Census Bureau that other federal, tribal, state or local government agencies should not use its urban-rural classification in other non-statistical programs without modifications of criteria to meet the particular purposes of those programs." *173 ¶ 30 We take no position on whether the County should use the "Wausau MPO Planning Boundary" map to determine which portions of Rib Mountain are "rural." As a general matter, we do not require the County to use any particular criteria in order to determine which unincorporated land within its territory qualifies as "rural," for purposes of WIS. STAT. § 59.54(4) and (4m), and which does not. The legislature chose not to include any specific criteria in those subsections for distinguishing between rural and non-rural areas. Its failure to do so makes sense, because the criteria used to make that distinction will likely vary on a county-by-county basis, as land that might reasonably be categorized as rural in the context of a more populous county could conceivably be categorized as urban in the context of a less populous county.[11]
¶ 31 It is for this very reason that we do not endeavor to establish specific factors for determining *514 what property qualifies as rural, for purposes of WIS. STAT. § 59.54(4) and (4m). A county's determination in that regard must be made on a case-by-case basis, in light of the unique factual circumstances presented, and keeping in mind the purposes of the relevant statutory subsections-i.e., aiding in fire protection, emergency services, and civil defense. See § 59.54(4). Ultimately, however, each county that chooses to establish a naming and numbering system under § 59.54(4) must establish clear, reasonable criteria for identifying "rural" areas within its territory, and, pursuant to § 59.54(4m), a county may act "in cooperation with any town or towns" within its jurisdiction in order to make this determination.[12] Courts must review any challenges to a county's criteria or their implementation by considering both the unique factual circumstances presented and the purposes of the relevant statutory subsections, so as to determine the reasonableness of the county's conclusions.
By the Court .-Judgment reversed and cause remanded for further proceedings.

All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

The Ordinance stated incorporated areas were exempt from its terms "unless otherwise indicated in any adopted intergovernmental agreement."

Referring to the county board of supervisors. See Wis. Stat. § 59.001(1).

In addition to the County, Rib Mountain's complaint named as defendants the Town of McMillan, the Town of Mosinee, the Town of Stettin, the Town of Texas, the Town of Wausau, and the Town of Weston. Rib Mountain asserted these towns were "necessary parties" because the County's Plan would require them to rename roads that were not rural, and, as such, their interests would be affected by the resolution of Rib Mountain's lawsuit. In the circuit court, the defendant towns either took no position on Rib Mountain's claims or joined the County's arguments. None of the defendant towns have participated in the instant appeal.

Liberty Grove Town Board v. Door County Board of Supervisors , 2005 WI App 166, 284 Wis. 2d 814, 702 N.W.2d 33, interpreted the 2001-02 version of Wis. Stat. § 81.01(11) and the 2003-04 versions of Wis. Stat. § 60.23(17) and Wis. Stat. § 59.54(4) and (4m). See Liberty Grove , 284 Wis. 2d 814, ¶ 5 n.1, ¶ 9 n.2, 702 N.W.2d 33. The 2003-04 version of § 59.54(4) and (4m) is identical to the current version of those subsections.

Wisconsin Stat. § 59.54(4)(a) was previously numbered Wis. Stat. § 59.07(65)(a). See 1995 Wis. Act 201, § 179. When enacted in 1957, § 59.07(65)(a) provided: "Each rural road and each home, business, farm or other establishment, may be assigned a name or number."See 1957 Wis. Laws, ch. 23, § 1 (emphasis added). When § 59.07(65)(a) was renumbered as § 59.54(4)(a) in 1995, the legislature deleted the words "and each" before the listed terms "home, business, farm or other establishment." See 1995 Wis. Act 201, § 179. The legislature's choice to delete the words "and each" shows that it intended the word "rural" to apply to every term in the subsequent list, not just the term "road."

The fact that "urban" is the antonym of "rural" further supports this conclusion. See Rural , Merriam-Webster Thesaurus (2005). Urban is commonly defined as: "of, relating to, characteristic of, or taking place in a city"; "constituting or including and centered on a city"; and "of, relating to, or concerned with an urban and specif[ically] a densely populated area." Urban , Webster's Third New International Dictionary (1993).

It appears undisputed that, at the time the parties submitted their briefs in this appeal, only two incorporated municipalities in the County had elected to participate in the County's uniform addressing system.

In a short argument at the end of its appellate brief, the County appears to contend that Rib Mountain is not entitled to declaratory or injunctive relief because it has "other legal remedy"-namely, it could "incorporate all or a portion of itself into a village," such that the incorporated territory would be exempt from operation of the Ordinance. The County cites no legal authority in support of this minimally developed argument, and we therefore decline to address it. See State v. Pettit , 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992). We do note, however, that it defies common sense to suggest that, simply because Rib Mountain could elect to incorporate, the County should be permitted to exceed the authority granted to it by Wis. Stat. § 59.54(4) and (4m) by implementing its uniform addressing system in unincorporated areas that are not "rural."

Rib Mountain clarifies in its reply brief that it does not contend the County is required to use the "Wausau MPO Planning Boundary" map in order to distinguish between rural and urban areas. It merely offers the map as one means of drawing that distinction.

Notably, in other statutes, the legislature has set forth specific population or population density thresholds for determining whether a particular area, municipality, or facility qualifies as "rural." See, e.g. , Wis. Stat. §§ 85.08(5)(a), 231.35(1)(d) ; 2017 Wis. Act 59, § 1657b; 2017 Wis. Act 97, § 1. The legislature's failure to include similar thresholds in Wis. Stat. § 59.54(4) and (4m) supports a conclusion that the legislature intended the determination of what is "rural" under those subsections to be made on a case-by-case basis, taking into consideration factors relevant in each individual county.

In the instant case, we have determined the County's chosen criterion-i.e., whether land was unincorporated-failed to limit the proposed uniform addressing system to rural areas, as required by the plain language of Wis. Stat. § 59.54(4) and (4m). The record does not indicate that the County relied on any other criteria in order to determine which parts of its territory would be subject to its uniform addressing system. As a result, there is no basis, in the context of this appeal, for us to discuss or opine on the reasonableness of any criteria the County could have considered in making that determination.