# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2017AP2021 |
| COMPLETE TITLE: | Town of Rib Mountain, |
| |       Plaintiff-Appellant, |
| |    v. |
| | Marathon County, |
| |       Defendant-Respondent-Petitioner, |
| | Town of McMillan, Town of Mosinee, Town of Stettin, Town |
| | of Texas, Town of Wausau and Town of Weston, |
| |       Defendants-Respondents. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 383 Wis. 2d 493,916 N.W.2d 164
PDC No:2018 WI App 42 - Published

| | |
|---|---|
| OPINION FILED: | May 16, 2019 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | February 14, 2019 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | Circuit |
|   COUNTY: | Marathon |
|   JUDGE: | Gregory B. Huber |

| | |
|---|---|
| JUSTICES: | |
|   CONCURRED: | |
|   DISSENTED: | |
|   NOT PARTICIPATING: | ABRHAMSON, J. and A.W. BRADLEY, J. did not participate. |

ATTORNEYS:

For the defendant-respondent-petitioner, there were briefs filed by *Scott M. Corbett*, corporation counsel. There was an oral argument by *Scott M. Corbett*.

For the plaintiff-appellant, there was a brief filed by *Dean R. Dietrich*, *Esq.*, *Alyson D. Dieckman*, *Esq.*, and *Dietrich Vanderwaal S.C.*, Wausau. There was an oral argument by *Dean R. Dietrich*.

An amicus curiae brief was filed on behalf of Wisconsin Counties Association by *Andrew T. Phillips*, *Bennett J. Conard*, and *Von Briesen & Roper, S.C.*, Milwaukee.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2017AP2021
(L.C. No. 2017CV207)

STATE OF WISCONSIN             :        IN SUPREME COURT

**Town of Rib Mountain,**

       **Plaintiff-Appellant,**

  **v.**

**Marathon County,**

       **Defendant-Respondent-Petitioner,**

**Town of McMillan, Town of Mosinee, Town of Stettin, Town of Texas, Town of Wausau and Town of Weston,**

       **Defendants-Respondents.**

**FILED**

**May 16, 2019**

Sheila T. Reiff
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Reversed.*

¶1 REBECCA GRASSL BRADLEY, J. In 1957, the Wisconsin legislature conferred authority on counties to "establish a rural naming or numbering system in towns for the purpose of aiding in fire protection, emergency services, and civil defense." Wis. Stat. § 59.54(4) (2017-18).[1] Marathon County

---

[1] All subsequent references to the Wisconsin Statutes are to the 2017-18 version unless otherwise indicated.

decided to establish such a system in 2016 but the Town of Rib Mountain challenged its authority to do so, contending the statute confines counties to implementing naming and numbering systems only within "rural" areas of towns. Marathon County maintains that the only territorial restriction on its authority to establish a "rural naming or numbering system" is "in towns." The circuit court denied the Town declaratory relief, the Town appealed its decision, and the court of appeals reversed. We agree with Marathon County and hold, consistent with the text of the statute, that Marathon County may establish a rural naming or numbering system in towns, and the statute does not restrict this exercise of authority to only rural areas within them. "Rural" merely describes the naming or numbering system and the roads to which the system applies; it has no independent operative effect. We reverse the decision of the court of appeals.

## I. BACKGROUND

¶2 In 2016, Marathon County passed Ordinance #O-7-16 to "establish[] and maintain[] a county addressing system for Marathon County." See Marathon Cty. Or. § 9.20(2) (2018). Under the ordinance, Marathon County would "assign each location [in Marathon County] a unique address which will aid emergency [personnel] in providing fire protection, emergency medical services, and law enforcement services; and meet other general locational needs such as delivery services of the public." See id. The ordinance applied "to each road, home, business, farm,

2

structure, or other establishments in the unincorporated areas of the County." See Marathon Cty. Or. § 9.20(4) (2018).

¶3    The Town of Rib Mountain was one of 40 towns required by Marathon County to participate in the addressing system.  The Town filed an action for declaratory relief against Marathon County.[2]  The Town alleged that "Marathon County's authority to implement a naming and numbering system in towns is limited to rural naming and numbering systems, upon which only rural roads and intersections, homes, businesses, farms, and other establishments may be assigned a name or number, and only when the purpose of implementing a rural naming and number system in towns is to aid in fire protection, emergency services, and civil defense."    The Town asserted that Marathon County's "[o]rdinance unlawfully exceeds the statutory authority granted to Marathon County by the Wisconsin Legislature and intrudes upon the Town's statutory authority to choose or change the names of urban or non-rural roads."

¶4    The circuit court denied the Town's claim for declaratory relief.[3]  The circuit court disagreed with the Town's assertion that "rural" as used in Wis. Stat. § 59.54 restricts where Marathon County may establish an addressing system, and it

___

[2] The Complaint added the Towns of McMillan, Mosinee, Stettin, Texas, Weston, and Wausau as necessary parties.  Those towns filed letters with the Clerk of the Supreme Court stating that they will not be filing a brief and will abide by this court's decision.

[3] The Honorable Gregory Huber presided.

held that the term "'rural' modifies 'naming or numbering system'——it has to do with the type of system, not with the location where it can be imposed." The circuit court ruled that "rural" was best read to mean "unincorporated." Because, the circuit court reasoned, the statute's "only limitations are that it be implemented 'in towns' and that it be implemented 'for the purpose of aiding in fire protection, emergency services, and civil defense,'" the circuit court denied the motion for declaratory relief.

¶5 The Town appealed, and the court of appeals reversed the circuit court. Town of Rib Mountain v. Marathon Cty., 2018 WI App 42, 383 Wis. 2d 493, 916 N.W.2d 164. The court of appeals determined Marathon County could implement a naming or numbering system only in "unincorporated areas that also qualify as 'rural.'" Id., ¶1. The court of appeals rejected Marathon County's argument that the word "rural" describes the type of naming or numbering system and does not impose a territorial limitation on Marathon County's authority. Id., ¶¶12-13. The court of appeals concluded that the "use of the word 'rural' . . . unambiguously demonstrates that [the legislature] intended to restrict a county's naming and numbering authority to 'rural' areas." Id. The court of appeals rejected the circuit court's definition of "rural" to mean "'unincorporated' . . . because it renders the word 'rural' in Wis. Stat. § 59.54(4) and (4m) surplusage." Town of Rib Mountain, 383 Wis. 2d 493, ¶¶15-16.

4

¶6 Having concluded that the statute restricts Marathon County's authority to implement a naming and numbering system to rural areas in towns, the court of appeals consulted dictionaries to give meaning to "rural." Id., ¶18. Combining several definitions, the court of appeals adopted the following definition of "rural" for Wis. Stat. § 59.54(4) and (4m):

> [T]hese definitions establish that: (1) the term "rural" is used to describe things that are characteristic of, or related to, the "country"; and (2) the "country" encompasses places that are distinct from "urban" areas—i.e., areas with comparatively higher concentrations of people or buildings. Based on these definitions, we conclude the term "rural" in Wis. Stat. § [59.54](4) and (4m) denotes areas that are not urban. In other words, the term "rural" refers to areas that are comparatively less densely populated by people or buildings, or areas that are characteristic of, or related to, the country.

Town of Rib Mountain, 383 Wis. 2d 493, ¶20 (footnote omitted).

¶7 Employing this definition of "rural," the court of appeals held that "[t]he County thus exceeded its authority by mandating the implementation of a uniform addressing system in all unincorporated areas of the County, without regard to whether those areas also qualified as 'rural.'" Id., ¶28. However, despite adopting a definition of "rural" and declaring Marathon County's ordinance too broad, the court of appeals remanded the case, placing the burden on Marathon County to "demonstrate which portions of Rib Mountain, if any, qualify as 'rural,' according to the plain meaning of the term as set forth above." Id., ¶29. The court of appeals instructed:

> As a general matter, we do not require the County to use any particular criteria in order to determine

5

which unincorporated land within its territory qualifies as "rural," for purposes of Wis. Stat. § 59.54(4) and (4m), and which does not. The legislature chose not to include any specific criteria in those subsections for distinguishing between rural and non-rural areas. Its failure to do so makes sense, because the criteria used to make that distinction will likely vary on a county-by-county basis, as land that might reasonably be categorized as rural in the context of a more populous county could conceivably be categorized as urban in the context of a less populous county.

Town of Rib Mountain, 383 Wis. 2d 493, ¶30. The court of appeals did "not endeavor to establish specific factors for determining what property qualifies as rural" and tasked Marathon County with "establish[ing] clear, reasonable criteria for identifying 'rural' areas within its territory." Id., ¶31. A reviewing court in the future was to "review any challenges to a county's criteria or their implementation by considering both the unique factual circumstances presented and the purposes of the relevant statutory subsections, so as to determine the reasonableness of the county's conclusions." Id.

¶8 Marathon County petitioned this court for review, and we granted the petition.

## II. DISCUSSION

### A. Standard of Review

¶9 This case requires us to interpret Wis. Stat. § 59.54(4) and (4m). Statutory interpretation is a question of law we review de novo. CED Props., LLC v. City of Oshkosh, 2018 WI 24, ¶20, 380 Wis. 2d 399, 909 N.W.2d 136. "[S]tatutory interpretation 'begins with the language of the statute'" and "[i]f the meaning of the statute is plain, we ordinarily stop

6

the inquiry." State ex rel. Kalal v. Circuit Court for Dane Cty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 (quoted source omitted). We give statutory language "its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." Id. Context and structure are also "important to meaning," and we interpret statutory language "in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." Id., ¶46. "Where statutory language is unambiguous, there is no need to consult extrinsic sources of interpretation, such as legislative history." Id.

### B. Analysis

#### 1. Wisconsin Stat. § 59.54(4) and (4m) apply in towns.

¶10 The issue is whether Wis. Stat. § 59.54(4) and (4m) restrict Marathon County's authority to establish a naming or numbering system to "rural" areas. Generally, towns possess the authority to assign a name to, or rename, each road within their borders. See Liberty Grove Town Bd. v. Door Cty. Bd. of Supervisors, 2005 WI App 166, ¶¶9-10, 284 Wis. 2d 814, 702 N.W.2d 33; see also Wis. Stat. § 60.23(17) (the town board may "[n]ame, or change the name of, any street in the town under" Wis. Stat. § 82.03(7)); and § 82.03(7) ("The town board shall, by ordinance, assign a name to each of the roads that are under

7

the town's jurisdiction."). Originally enacted in 1957,[4] Wis. Stat. § 59.54, "gives counties discretionary authority to establish a rural naming or numbering system when the purpose of the system is to aid in fire protection, emergency services and civil defense," thereby overriding towns' traditional authority to name roads. Liberty Grove Town Bd., 284 Wis. 2d 814, ¶¶11, 15. The Town argues that Marathon County exceeded its statutory authority by enacting an ordinance calling for the renaming of roads throughout the Town because at least certain areas within the Town are not rural, as the Town perceives them.[5]

¶11 Wisconsin Stat. § 59.54(4) and (4m) provide as follows:

> (4) Rural naming or numbering system. The board may establish a rural naming or numbering system in towns for the purpose of aiding in fire protection, emergency services, and civil defense, and appropriate and expend money therefor, under which:
>
> (a) Each rural road, home, business, farm or other establishment, may be assigned a name or number.
>
> (b) The names or numbers may be displayed on uniform signs posted on rural roads and intersections, and at each home, business, farm or other establishment.
>
> (4m) Rural naming or numbering system; town cooperation. The rural naming or numbering system

---

[4] The original version of the statute was enacted in 1957 as Wis. Stat. § 59.07. See 1957 Wis. Laws, ch. 23, § 1.

[5] The Town argues that it is urban, but it maintains that "the rural or urban nature of Rib Mountain is more appropriately decided by the Circuit Court," and it agrees with the court of appeals decision to remand for a factual determination on this issue.

under sub. (4) may be carried out in cooperation with any town or towns in the county.

¶12 Under the text of Wis. Stat. § 59.54, Marathon County "may establish a rural naming or numbering system <u>in towns</u>." § 59.54(4) (emphasis added). Accordingly, the territorial limit on Marathon County's authority to establish a "rural naming or numbering system" is "in towns." Subsection (4) does not say "in rural towns" or "in rural portions of towns." And "rural" does not modify this locational limitation. Subsections (4) and (4m) both describe a "rural naming or numbering system," repeating the title given to each subsection, at least in part.[6] The word "rural" in these subsections describes the "naming or numbering system"; it does not modify the territorial scope of "in towns." As a textual matter, the use of "rural" in subsections (4) and (4m) does not impose an additional territorial constraint on the establishment of naming or numbering systems, limiting them to only rural towns or rural portions of towns. In subsections (4) and (4m), "rural" instead is a general description of the naming or numbering system, while "in towns" is the territorial scope of Marathon County's authority.

¶13 Paragraphs (4)(a) and (4)(b) likewise do not modify subsection (4)'s territorial perimeter of "in towns." Paragraph

---

[6] "The titles to subchapters, sections, subsections, paragraphs and subdivisions of the statutes and history notes are not part of the statutes." Wis. Stat. § 990.001(6); <u>see also</u> <u>Manitowoc Co. v. Lanning</u>, 2018 WI 6, ¶72 n.4, 379 Wis. 2d 189, 906 N.W.2d 130 (R. Grassl Bradley, J., concurring).

(a) states that "[e]ach <u>rural</u> road, home, business, farm or other establishment, may be assigned a name or number," and paragraph (b) provides that the "numbers may be displayed on uniform signs posted on <u>rural</u> roads and intersections, and at each home, business, farm or other establishment." Wis. Stat. § 59.54(4)(a)-(b) (emphasis added). The Town "concedes the adjective 'rural' may not apply to each noun" in these lists. We agree. "Rural" modifies "road" in paragraph (a) and "roads and intersections" in paragraph (b). Here too the word "rural" describes the roads and intersections but does not modify subsection (4)'s territorial restriction of establishing the system "in towns." The text of § 59.54(4) and (4m) plainly delineates where a county may establish a rural naming or numbering system——"in towns"——while the word "rural" generally describes the "naming or numbering system" and the "roads and intersections" within that system.

### 2. "Rural" has descriptive but not operative meaning in Wis. Stat. § 59.54.

¶14 Having concluded that "rural" does not modify the locational parameter of "in towns," we now address what the word "rural" means in the context of this statute. The Town insists that we "must consider each term in the statute to avoid surplusage" and argues that "rural" further restricts Marathon County's authority to establish a naming or numbering system within only the <u>rural portions</u> of towns rather than throughout towns in their entirety. The Town asks us to adopt the court of appeals' definition of "rural" which was "not urban," "areas

10

that are comparatively less densely populated by people or buildings, or areas that are characteristic of, or related to, the country." Town of Rib Mountain, 383 Wis. 2d 493, ¶20. Marathon County urges us to reject the court of appeals' definition and instead hold that "rural" refers to unincorporated areas, meaning towns that have not been incorporated into villages or cities. We reject both definitions because "rural" is most reasonably read as a general descriptor. Because it has no legally operative meaning, it is surplusage.

¶15 Even though our interpretation results in declaring "rural" surplusage, the canon against surplusage is not an imperative that must be followed inexorably regardless of where that leads. See Milwaukee Dist. Council 48 v. Milwaukee Cty., 2019 WI 24, ¶17 n.10, 385 Wis. 2d 748, 924 N.W.2d 153; State v. Mason, 2018 WI App 57, ¶26, 384 Wis. 2d 111, 918 N.W.2d 78 ("The directive that we endeavor to give meaning to all parts of statutes so as to avoid surplusage is not a directive that we give different terms different meanings, regardless where that leads."). Rather, the surplusage canon merely instructs that statutory language should be read "where possible to give reasonable effect to every word." Kalal, 271 Wis. 2d 633, ¶46 (emphasis added). We recognize that "[s]ometimes drafters do repeat themselves and do include words that add nothing of substance." Milwaukee Dist. Council 48, 385 Wis. 2d 748, ¶24 (quoting Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 176 (2012)); see also Arlington

11

Cent. Sch. Dist. Bd. of Educ. v. Murphy, 548 U.S. 291, 299 n.1 (2006) ("While it is generally presumed that statutes do not contain surplusage, instances of surplusage are not unknown."); United States v. Bronstein, 849 F.3d 1101, 1110 (D.C. Cir. 2017) (declining to apply the canon against surplusage, and observing that at times "drafters do repeat themselves and do include words that add nothing of substance" (quoting Scalia at 176-77)). For this reason, the canon against surplusage is not absolute. Milwaukee Dist. Council 48, 385 Wis. 2d 748, ¶17 n.10; Mason, 384 Wis. 2d 111, ¶26 ("the 'preference for avoiding surplusage constructions is not absolute'" (quoted source omitted)).

¶16 Because surplusage does exist in legislative drafting, "[w]e should be wary . . . of 'creat[ing] unforeseen meanings or legal effects from' what is nothing more than a 'stylistic mannerism.'" Milwaukee Dist. Council 48, 385 Wis. 2d 748, ¶25 (quoting Scalia, supra ¶15, at 177; alteration in original). Indeed, courts have observed that "[s]ometimes the most reasonable reading of a statute, one that gives it the legislatively intended effect, is one that renders some language in the statute surplusage." See Milwaukee Dist. Council 48, 385 Wis. 2d 748, ¶24 (quoting Mason, 384 Wis. 2d 111, ¶26). Applying the rule against surplusage may be inappropriate where it would render an otherwise unambiguous statute ambiguous. See e.g., Lamie v. United States Tr., 540 U.S. 526, 536 (2004) (adopting an interpretation that rendered a term "surplusage" to avoid ambiguity because "[w]e should prefer the plain meaning"

12

and doing so would "avoid the pitfalls that plague too quick a turn to the more controversial realm of legislative history"); see also Barton v. United States Attorney Gen., 904 F.3d 1294, 1301 (11th Cir. 2018) (explaining that when "faced with a choice between a plain-text reading that renders a word or clause superfluous and an interpretation that gives every word independent meaning but, in the doing, muddies up the statute—courts 'should prefer the plain meaning since that approach respects the words of Congress.'" (quoting Lamie, 540 U.S. at 536)); TMW Enters., Inc. v. Federal Ins. Co., 619 F.3d 574, 578 (6th Cir. 2010) (interpreting an insurance contract and explaining "'[w]here there are two ways to read the text'——and the one that avoids surplusage makes the text ambiguous——'applying the rule against surplusage is, absent other indications, inappropriate.'" (quoting Lamie, 540 U.S. at 536)).

¶17 The imprecision of "rural" and the absence of a statutory definition supports our conclusion that "rural" as used in Wis. Stat. § 59.54(4) and (4m) is a general descriptive term, not a territorial constraint.  The ordinary definition of "rural" is both broad and nebulous; attempting to apply it would generate unnecessary ambiguity.  "Rural" broadly refers to things that are related to, or are characteristic of, the country in contrast to more populated areas.  The common dictionary definitions relied upon by the court of appeals illustrate the point:

> The dictionaries we have consulted generally define
> the adjective "rural" as describing something that is

13

related to, or characteristic of, the country. For instance, one dictionary defines "rural" as "in, relating to, or characteristic of the countryside rather than the town." Rural, New Oxford American Dictionary (2001). Another dictionary similarly defines "rural" as "of or relating to the country, country people or life, or agriculture." Rural, Webster's New Collegiate Dictionary (1977). A third defines "rural" as "of, relating to, associated with, or typical of the country." Rural, Webster's Third New International Dictionary (1993).

Town of Rib Mountain, 383 Wis. 2d 493, ¶18. Our review of other dictionary definitions yields essentially identical results.[7]

¶18 If "rural" means something related to the "country," these definitions beg the question of what "country" means. The dictionaries relied upon by the court of appeals similarly fail to establish a more concrete definition:

> "Country," in turn, is defined by one dictionary as "districts and small settlements outside large towns, cities, or the capital." Country, New Oxford American Dictionary (2001). Another dictionary states that "country" means both "an indefinite usu[ally] extended expanse of land" and "rural as distinguished from urban areas." Country, Webster's New Collegiate Dictionary (1977). A third dictionary similarly defines "country" as both "an expanse of land of undefined but usu[ally] considerable extent" and "rural regions as distinguished from city, town, or

---

[7] Black's Law Dictionary defines "rural" as "[c]oncerning the country, as opposed to urban (concerning the city)." Rural, Black's Law Dictionary (6th ed. 1990). The American Heritage Dictionary defines "rural" as "[o]f, relating to, or characteristic of the country," "relating to people who live in the country," or "relating to farming." Rural, American Heritage Dictionary (5th ed. 2011). Finally, the Shorter Oxford English Dictionary defines "rural" in pertinent part as "[o]f, pertaining to, or characteristic of the country or country life; existing or performed in the country; agricultural, pastoral." Rural, Shorter Oxford English Dictionary (6th ed. 2007).

14

other thickly inhabited and built-up areas." Country, Webster's Third New International Dictionary (1993).

Town of Rib Mountain, 383 Wis. 2d 493, ¶19 (emphasis added; alterations in original). The dictionaries we reviewed provide similar definitions.[8]

¶19 These definitions illustrate that the meaning of "rural" is subjective and indeterminate. Common dictionary definitions are somewhat circular because "rural" points us to "country," and "country" is often defined as comprising "rural" areas, which brings us back full circle to "rural" but with no elucidation of its meaning. "Rural," according to prevailing dictionary definitions, generally refers to things that are related to, or are characteristic of, the country, in contrast to more populated areas, rendering "rural" a relative term, subject to the eye of the beholder. What is considered rural in one area might be deemed urban in another. The criteria used to determine whether an area is rural or urban will undoubtedly change from county to county because land might be categorized as rural (i.e., more sparsely populated) in a more populous county but that same land might be categorized as urban in a

---

[8] Black's Law Dictionary defines "country" as "[r]ural, as distinguished from urban areas," country, Black's Law Dictionary (6th ed. 1990), the American Heritage Dictionary defines it as "[a]n area or expanse outside cities and towns; a rural area," country, American Heritage Dictionary (5th ed. 2011), and the Shorter Oxford English Dictionary defines it in part as "[o]f or pertaining to rural as distinct from urban districts; situated or living in the country; belonging to or characteristic of the country, esp. as contrasted with the town." Country, Shorter Oxford English Dictionary (6th ed. 2007).

15

less populous county. Merely contrasting "rural" with "urban" is unhelpful and gives no clues as to how one would go about ascertaining what constitutes "rural" and what constitutes "urban." There is no way to determine how sparsely populated an area must be in order to be rural, and the common dictionary definitions do not include such criteria. Saying that "rural" means "characteristic of, or related to, the country," "comparatively less densely populated by people or buildings," or "not urban"——as the Town would have us define it——is little more than a tautology. It is merely a melding of common dictionary definitions, which lack objective definitional content. The general definition is not, as the Town insists, "workable and pragmatic"; it is utterly indeterminate. Nor are we able to discern a better, more usable definition given the vagueness of common dictionary definitions.

¶20 The purpose of Wis. Stat. § 59.54, as expressed in its text, supplies an additional reason to reject the Town's interpretation. Ascribing different meaning to "rural" on a town-by-town basis is unworkable and undermines the purpose of § 59.54. "[P]urpose [is] perfectly relevant to a plain-meaning interpretation of an unambiguous statute as long as the . . . purpose [is] ascertainable from the text and structure of the statute itself, rather than extrinsic sources, such as legislative history." Kalal, 271 Wis. 2d 633, ¶48. The purpose of § 59.54(4) and (4m) is expressed in the text of the statute: to allow counties to establish naming or numbering systems "to aid[] in fire protection, emergency services, and civil

16

defense." § 59.54(4). The Town's (and the court of appeals') construction of "rural" as a constraint on implementation of such systems would frustrate the public safety purpose pronounced in the statute. A county would be required to make a largely arbitrary determination of the extent to which a naming or numbering system should apply to particular areas within each town, based upon relative population density, effectively precluding any uniformity within the system. Because of varying population characteristics, the definition of "rural" would be inconsistent, resulting in the statute's application varying from county to county, from town to town, and, under the court of appeals' construction, even within towns because only "rural" portions of towns would participate in the system. Such variation would hinder rather than help a county's provision of emergency services, frustrating the explicit statutory purpose. "A textually permissible interpretation that furthers rather than obstructs the document's purpose should be favored." Scalia, supra ¶15, 63; see also Student Ass'n of Univ. of Wisconsin-Milwaukee v. Baum, 74 Wis. 2d 283, 294-95, 246 N.W.2d 622 (1976) (explaining "the purpose of the whole act is to be sought and is favored over a construction which will defeat the manifest object of the act"). Given the absence of any textual indication that "rural" has a legally operative meaning, the purpose expressed in the language of the statute lends additional support to our rejection of the Town's interpretation of "rural" as a town-by-town limitation on the scope of Marathon County's authority.

17

¶21 Marathon County's proffered definition of "rural" as "unincorporated," while more precise than the definition the Town proposes, fares no better. At oral argument, Marathon County explained that by "unincorporated" it meant towns that had not incorporated into villages or cities; in other words, Marathon County's use of "unincorporated" simply means "towns."[9] But defining "rural" to mean "town" is duplicative of "in towns." It creates unnecessary surplusage rather than giving independent meaning to "rural," which would leave us where we started: "rural" has no independent legal meaning. Furthermore, "rural" does not mean "unincorporated" or "town," even if towns are generally rural. "Rural" means something characteristic of or related to the country or areas that are more sparsely populated. In the absence of a statutory definition showing that the legislature intended "rural" to mean "unincorporated" or "town" we will not read one into the statute. The text of the statute says Marathon County's authority to establish a naming or numbering system is limited to towns; therefore, this is the meaning we apply. Wis. Stat. § 59.54(4).

---

[9] Marathon County is correct. Three categories of municipalities exist in Wisconsin: towns, villages, and cities. Towns are corporate bodies, see Wis. Stat. § 60.01(1) ("A town is a body corporate[.]"), but may, under certain circumstances, incorporate into villages or cities. See generally Wis. Stat. § 66.0203. Any municipal territory that has not been incorporated into a village or a city remains unincorporated territory, that is, a town. Accordingly, "unincorporated" territory and "town" are one and the same.

18

¶22 Our analysis is supported by other uses of "rural" in the statutes, which demonstrate that when the legislature wants to give "rural" a legally operative meaning, it has done so by defining the term. For example, in Wis. Stat. § 85.08(5), the legislature defined "rural municipality" as "[a] city, town or village with a population of 4,000 or less" or "[a] city, town or village that is located in a county with a population density of less than 150 persons per square mile," and in Wis. Stat. § 231.35(1)(d) it defined "rural" as "outside a metropolitan statistical area specified under 42 CFR 412.62(f)(ii)(A) or in a city, village, or town with a population of not more than 14,000." While these definitions of "rural" differ from each other, each provides objective criteria for applying what is otherwise an amorphous term. Each legislatively drafted definition provides content capable of application whereas "rural," as generally understood, does not.

¶23 In contrast, the legislature does not define "rural" in Wis. Stat. § 59.54(4) and (4m). We are left with general dictionary definitions of the word, which are too vague to apply in any meaningful manner. Any attempt to give legally operative meaning to "rural" using its general definition requires us to add words to the statute. Nothing within the statutory language suggests that "rural" denotes shifting boundary lines for a county's authority based on population density or other criteria. The lack of any workable definition of "rural" and the placement of "rural" as a modifier of the "naming or numbering system" suggests the only reasonable reading of the

19

text renders "rural" merely descriptive of the "naming or numbering system" and the "roads and intersections" within the system. "Rural" does not impose an additional territorial limitation on a county's authority. We decline to transform a stylistic mannerism into an independent legal limitation absent any textual directive to do so.[10]

### III. CONCLUSION

¶24 Marathon County's authority to establish a rural naming or numbering system under Wis. Stat. § 59.54(4) and (4m) is plain. The statutory text provides that a county may establish such a system "in towns." Accordingly, Marathon County acted within its authority by enacting an ordinance to create a uniform naming and numbering system in towns throughout Marathon County. The text does not support the Town's

---

[10] The parties appear to agree that towns were generally rural when Wis. Stat. § 59.54 was enacted in 1957. The Town specifically states that "it is important for the Court to note that in 1956, the unincorporated areas in counties in the State of Wisconsin were made up almost exclusively by sparse populations that were almost certainly rural." Marathon County similarly maintains that the word "rural" described the nature of the system that existed in 1957. If true, the predominantly rural character of towns at the time § 59.54 was enacted could explain why the legislature chose to call the addressing system under subsections (4) and (4m) "a rural naming or numbering system." The parties' apparent agreement suggests potential stylistic reasons the drafters chose to include the word in the statute. This is consistent with our analysis of the statutory language that "rural" is merely a general description of the naming or numbering system and the roads subject to it. We need not resolve this historical detail because "rural" does not restrict the locations where naming or numbering systems may be established.

construction of "rural" as an additional limitation on the territorial scope of Marathon County's authority to implement a rural naming or numbering system. "Rural" merely describes the naming or numbering system and affording it any meaning beyond this would require reading additional words into the statute, which we decline to do.

*By the Court.*——The decision of the court of appeals is reversed.

¶25 SHIRLEY ABRAHAMSON, J., withdrew from participation before oral argument.

¶26 ANN WALSH BRADLEY, J., did not participate.