# COURT OF APPEALS OF WISCONSIN
# PUBLISHED OPINION

Case No.:        2021AP1589

†Petition for Review Filed

Complete Title of Case:

### SOJENHOMER LLC,

### †PLAINTIFF-APPELLANT,

### V.

### VILLAGE OF EGG HARBOR,

### DEFENDANT-RESPONDENT.

| | |
|---|---|
| Opinion Filed: | March 14, 2023 |
| Submitted on Briefs: | March 15, 2022 |
| Oral Argument: | |

| | |
|---|---|
| JUDGES: | Stark, P.J., Hruz and Gill, JJ. |
| Concurred: | |
| Dissented: | |

Appellant
ATTORNEYS:        On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Jon R. Pinkert* and *Tyler D. Pluff* of *Pinkert Law Firm LLP*, Sturgeon Bay.

Respondent
ATTORNEYS:        On behalf of the defendant-respondent, the cause was submitted on the brief of *Ashley C. Lehocky* of *Town Counsel Law & Litigation, LLC*, Kaukauna.

A nonparty brief was filed by *Joshua L. Kaul*, attorney general, and *Clayton P. Kawski*, assistant attorney general, for the Wisconsin Department of Transportation

COURT OF APPEALS
DECISION
DATED AND FILED

March 14, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP1589**

STATE OF WISCONSIN

Cir. Ct. No. 2020CV101

IN COURT OF APPEALS

---

SOJENHOMER LLC,

   PLAINTIFF-APPELLANT,

V.

VILLAGE OF EGG HARBOR,

   DEFENDANT-RESPONDENT.

---

APPEAL from an order of the circuit court for Door County: DAVID L. WEBER, Judge. *Reversed and cause remanded for further proceedings*.

Before Stark, P.J., Hruz and Gill, JJ.

¶1     HRUZ, J.   Sojenhomer LLC, appeals an order granting the Village of Egg Harbor's motion for summary judgment on Sojenhomer's claim pursuant to

WIS. STAT. § 32.015 (2021-22).[1] That statute provides that property may not be acquired by condemnation to establish, among other things, a "pedestrian way." *See id.* WISCONSIN STAT. § 61.34(3)(b) similarly states that a village board may not use the power of condemnation to acquire property for the purpose of establishing a "pedestrian way."

¶2 The Village sought to condemn part of Sojenhomer's property to establish a sidewalk, and the circuit court concluded, as a matter of law, that WIS. STAT. § 32.015 did not prohibit the Village from doing so. In reaching that conclusion, the court interpreted the definition of "pedestrian way" in WIS. STAT. § 346.02(8)(a), and it determined that a "pedestrian way" is distinct from a "sidewalk" because the two terms are used together in both § 346.02(8)(a) and (b); thus, the terms must be interpreted to have different meanings in order to avoid surplusage.

¶3 Sojenhomer argues on appeal that a sidewalk is a "pedestrian way" as that term is used in WIS. STAT. §§ 32.015 and 61.34(3)(b). We agree. The general definition of a pedestrian way in WIS. STAT. § 346.02(8)(a) is broad and plainly includes sidewalks because a sidewalk is a "walk designated for the use of pedestrian travel." *See id.* Although the term sidewalk and the term pedestrian way are used together in both § 346.02(8)(a) and (b), we conclude that the two terms do not create surplusage in the statutes because each term has a textual function and neither term could be omitted without changing the meaning of those provisions.

¶4 We also conclude that the undisputed facts demonstrate that the Village used the power of condemnation to establish a pedestrian way, in violation

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

2

of WIS. STAT. §§ 32.015 and 61.34(3)(b). Indeed, the Village condemned part of Sojenhomer's property with a plan to construct a sidewalk—designated for pedestrian travel—on that property. The Village's installation of a street light on the condemned property and the Village's desire to address safety concerns by installing a sidewalk do not provide a basis for the Village to condemn Sojenhomer's property in violation of §§ 32.015 and 61.34(3)(b). We therefore reverse the circuit court's grant of summary judgment to the Village and remand for further proceedings consistent with this opinion.

## BACKGROUND

¶5     Sojenhomer owns a parcel of real property nestled between County Highway G and State Highway 42 where the two roads converge in the Village of Egg Harbor. Sojenhomer's property is home to the Shipwrecked Brew Pub and Restaurant. Beginning in about 2015, the Village began to discuss improving the safety of Highway G, which largely focused on "installing a sidewalk." The Village had received numerous complaints regarding the road, including that the road "was too narrow" and lacked both adequate parking and "a safe place for pedestrians to walk." In particular, pedestrians traveling by foot were "forced to utilize the road" where Highway G abutted the west side of Sojenhomer's property.

¶6     The Village subsequently retained McMahon Associates to determine what improvements could be made to Highway G and Highway 42. Michael Simon, a civil engineer with McMahon Associates, summarized "several deficiencies" with Highway G in a 2016 email to a senior executive with Wisconsin Public Service. Simon noted that the then-existing road had "no discernable ditches or storm sewer," which "results in on-street flooding during large rain events as well as icing issues in the winter months." Simon also noted that "[t]here is no continuous sidewalk for

3

pedestrians" and that pedestrians must share the road with motor vehicles and bicycles. "During peak season," Simon explained, "the effective width of the roadway is narrowed due to parking on both sides of the roadway which further reduces the area available for pedestrians." In addition, Simon stated that "[p]edestrians primarily utilize the west side" of Highway G, and, in order to access the nearby "Bird Trail," they must cross Highway G at a curve in the road where both pedestrians and vehicles have limited visibility. Simon said all of these concerns were "safety issue[s]" that the Village wanted to correct.

¶7      The Village, in conjunction with McMahon Associates, developed a plan to address these deficiencies. The plan proposed that Highway G be "urbanized with [a] storm sewer," that parking be limited to one side of the road, that a sidewalk be constructed on the east side of the road—the side on which Sojenhomer's property sits—and that decorative street lighting be installed on both sides of the road. The Village eventually reached an agreement with Door County to share some of the costs of the proposed project on Highway G. Although the County had planned to mill and resurface Highway G in 2018 or 2019, the County delayed those improvements to coincide with the Village's reconstruction of the road. The Village subsequently issued a relocation order pursuant to WIS. STAT. § 32.05, authorizing the Village to acquire certain real estate to complete the proposed improvements.

¶8      In February 2020, the Village sent Sojenhomer a "written offer to purchase fee title to 0.009 acres of additional right of way and a temporary limited easement of 0.071 acres of [Sojenhomer's property]." The offer explained that the land was "needed for [the] Village['s] … right of way reconstruction of [Highway G]." In response, Sojenhomer obtained an appraisal of the Village's proposed acquisition and temporary limited easement, which valued Sojenhomer's loss at nearly three times the amount offered by the Village. Sojenhomer then sent

4

that appraisal to the Village. The Village, in turn, served Sojenhomer a jurisdictional offer nearly doubling the amount of money originally offered, but Sojenhomer rejected that offer. *See* WIS. STAT. § 32.05(3).

¶9 In August 2020, Sojenhomer filed this action seeking to enjoin the Village from acquiring the desired portion of Sojenhomer's property through condemnation.[2] Sojenhomer alleged that the Village was seeking to condemn its property to construct a sidewalk on the east side of Highway G. Sojenhomer further alleged that "[t]he Village's condemnation of [its] property is only necessary to construct a sidewalk," and, therefore, the Village's condemnation "is in violation of WIS. STAT. § 32.015."

¶10 The Village filed an answer to Sojenhomer's complaint and then immediately filed a motion for judgment on the pleadings. The Village argued, among other things, that WIS. STAT. § 32.015 does not prohibit a municipality from condemning property to install a sidewalk because a sidewalk is not a "pedestrian way," as that term is used in § 32.015. In response, Sojenhomer filed a motion requesting that the circuit court strike both the Village's answer and its motion for judgment on the pleadings and that the court enter a default judgment, arguing that the Village had failed to file its answer within the statutory deadline.

¶11 The circuit court held a hearing on the motions and concluded that the Village had not filed a timely answer. Nonetheless, the court determined that it could not enter a default judgment unless Sojenhomer's complaint had stated a

---

[2] Although not explicitly alleged in the complaint or discussed by the parties in their appellate briefing, Sojenhomer's complaint appears to fall under WIS. STAT. § 32.05(5), which allows a property owner to commence an action "contest[ing] the right of the condemnor to condemn the property described in the jurisdictional offer." *See id.*

claim upon which relief could be granted. *See Davis v. City of Elkhorn*, 132 Wis. 2d 394, 398-99, 393 N.W.2d 95 (Ct. App. 1986).

¶12 When considering whether Sojenhomer's complaint had properly stated a claim, the circuit court recognized that the pertinent issue, as framed by the parties, was whether a "sidewalk" constitutes a "pedestrian way" for purposes of applying WIS. STAT. § 32.015. The court noted that a sidewalk is considered part of a highway or street under WIS. STAT. §§ 340.01(58) and 66.0907, respectively, and that a sidewalk is "within the road right of way." In contrast, the court observed that a pedestrian way "is a walk for pedestrians, but it is not part of any highway or street." The court therefore determined that "no sidewalks are pedestrian ways and no pedestrian ways are sidewalks. This is true even though both sidewalks and pedestrian ways are walks for use of pedestrian travel."

¶13 The circuit court further explained that it had

> to construe statutes to not render any part of them superfluous. To conclude that sidewalks are mere subsets of pedestrian[] ways would be to render the language about sidewalks in [WIS. STAT. §] 346.02(8)(a)—and (b), by the way—superfluous. The fact that this section uses the term "sidewalks" and "pedestrian ways" implies that one is not simply a subset of the other, but that the two are qualitatively different from one another. If they were the same, there would be no reason to mention the word "[sidewalks]" at all.[3] They could have just mentioned pedestrian ways.

The court concluded that WIS. STAT. § 32.015 "does not prohibit condemnation under the undisputed facts" nor does it "prohibit a Village from acquiring land to expand a highway," including one that will contain a sidewalk. Thereafter, the court

---

[3] The circuit court actually said "streets" in this sentence, but it appears to have misspoken in this regard. Based on the context of the court's discussion, we believe the court intended to say "sidewalks."

allowed the parties to submit further briefing on the procedural posture of the case, but the court later concluded that Sojenhomer's complaint must be dismissed for failing to state a claim upon which relief could be granted.

¶14    Before the circuit court entered an order dismissing Sojenhomer's complaint, Sojenhomer filed an amended complaint. The court, in turn, ordered the Village to file an answer to the amended complaint and set a deadline for dispositive motions. The Village subsequently filed an answer, and the parties commenced discovery.

¶15    As part of that discovery, Sojenhomer deposed Simon. Simon testified that "the primary reason for" the Highway G project was to improve "[w]alkability," but the project also attempted to address "drain problems and other issues." Using a map that depicted the Village's plans for the Highway G project, Simon described some of the intended improvements around Sojenhomer's property. In particular, Simon explained that the yellow highlighting on the map depicted the part of the proposed sidewalk located "within the existing right-of-way." Simon noted that the edge of the yellow highlighting "would be the back of [the] curb" and that none of the condemned property contained any part of the curb or gutter. Simon further testified that the pink highlighting on the map represented "the part of the sidewalk that is on the condemned property" and that the green highlighting on the map represented the part of the condemned property "needed" to install street lighting and a conduit for the electrical wires to those lights. Finally, Simon stated that the orange highlighting on the map was a temporary limited

easement "between the proposed sidewalk and the existing building" that would be "5-inch concrete sidewalk."[4]

¶16    When asked whether there were any "highway purposes" for acquiring the green highlighted area—other than for the street lighting—Simon stated, "There's a little more room for snow to go, I guess.  That would be about the only other reason for it."   Simon immediately acknowledged, however, that Sojenhomer's property was not being condemned to increase the available space for snow.   Simon also testified that the location of the street light in the green highlighted area was influenced by the need to create sufficient space for pedestrians to walk on the sidewalk.  Simon conceded that "[i]f not for the sidewalk, … the Village would not have needed to condemn … the property for the light pole" and that the Village "would have designed around the available right-of-way."  After summarizing Simon's testimony, Sojenhomer's counsel asked Simon whether there were "[a]ny other highway purposes for which this property was condemned[.]" Simon responded:  "No, just a little more room for pedestrians to walk."

¶17    The parties later filed cross-motions for summary judgment, and, in an oral ruling, the circuit court granted the Village's motion.  The court again recognized that the relevant issue was whether a sidewalk constitutes a pedestrian way.  The court stated that "if [a sidewalk] is [a pedestrian way], then the Village may not obtain the Sojenhomer property by eminent domain because there's really no question that the area that they took from Sojenhomer was used for a sidewalk." The court nevertheless concluded—"for the same reasons" discussed in its prior oral

---

[4]  For reference, the yellow highlighted area is the closest to Highway G, followed by the pink, green and orange highlighted areas, respectively.  As noted, the yellow highlighted area was already part of the existing right-of-way, but the pink, green and orange highlighted areas make up the portion of land that the Village acquired through condemnation.

ruling—that "a sidewalk is not a pedestrian way," and, therefore, WIS. STAT. § 32.015 did not prohibit the Village from condemning Sojenhomer's property.

¶18 Sojenhomer now appeals. Additional facts will be provided as necessary below.

## DISCUSSION

¶19 We review a circuit court's decision to grant a motion for summary judgment de novo, applying the same methodology as the circuit court. *See Quick Charge Kiosk LLC v. Kaul*, 2020 WI 54, ¶9, 392 Wis. 2d 35, 944 N.W.2d 598. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2).

¶20 This appeal presents an issue of first impression. Specifically, we must determine whether a sidewalk is a "pedestrian way," as that term is used in WIS. STAT. §§ 32.015 and 61.34(3)(b) and as it is defined in WIS. STAT. § 346.02(8)(a).[5] To date, no Wisconsin appellate court has interpreted or applied the meaning of the term "pedestrian way" in any of these three statutes.[6] The interpretation and application of a statute are questions of law that we review de novo. *Quick Charge Kiosk*, 392 Wis. 2d 35, ¶9.

---

[5] Several other statutes contain similar language restricting condemnation to establish or extend a pedestrian way. *See* WIS. STAT. §§ 27.01(2)(a), 27.019(10), 27.05(3), 27.065(1)(a), 27.08(2)(b)-(c), 59.52(6)(a), 60.782(2)(d), 62.22(1)(b), 62.23(17)(am), 85.09(2)(a).

[6] WISCONSIN STAT. § 32.015 along with the analogous language in other statutory provisions, *see supra* note 5, were enacted in 2017. *See* 2017 Wis. Act 59.

¶21 When interpreting condemnation statutes, such as WIS. STAT. §§ 32.015 and 61.34(3), we strictly construe the condemnor's power and the exercise thereof because the power of eminent domain is "extraordinary." ***Standard Theatres v. DOT***, 118 Wis. 2d 730, 742-43, 349 N.W.2d 661 (1984) (citation omitted); *see also* ***Spiegelberg v. State***, 2006 WI 75, ¶31, 291 Wis. 2d 601, 717 N.W.2d 641. "[T]he rule of strict construction is intended to benefit the owner whose property is taken against his or her will." ***Standard Theatres***, 118 Wis. 2d at 743. To that end, statutory provisions favoring the property owner are liberally construed. ***Id.***

¶22 "[S]tatutory interpretation 'begins with the language of the statute.'" ***State ex rel. Kalal v. Circuit Ct. for Dane Cnty.***, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 (citation omitted). "We give statutory language 'its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning.'" ***Town of Rib Mt. v. Marathon County***, 2019 WI 50, ¶9, 386 Wis. 2d 632, 926 N.W.2d 731 (citation omitted). We also interpret statutory language "in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." ***Id.*** (citation omitted). Where possible, we interpret statutory language in such a manner "to give reasonable effect to every word, in order to avoid surplusage." ***Kalal***, 271 Wis. 2d 633, ¶46.

¶23 If the meaning of the statutory language is plain and unambiguous, our inquiry ordinarily ends, and "we need not 'consult extrinsic sources of interpretation, such as legislative history.'" ***Milwaukee Dist. Council 48 v. Milwaukee County***, 2019 WI 24, ¶11, 385 Wis. 2d 748, 924 N.W.2d 153 (citation omitted). A statute is not ambiguous simply because "there is a disagreement about

10

the statutory meaning." *Kalal*, 271 Wis. 2d 633, ¶47. Rather, a statute is ambiguous if its "language *reasonably* gives rise to different meanings." *Id.* (citation omitted).

## I. The meaning of "pedestrian way" in WIS. STAT. §§ 32.015 and 61.34(3)(b)

¶24 A village board has the authority to acquire property through condemnation to construct and establish streets. *See* WIS. STAT. § 61.34(3)(a) ("Condemnation shall be as provided by [WIS. STAT.] ch. 32."). A village board's ability to acquire property through condemnation, however, is subject to several limitations. *See, e.g.*, WIS. STAT. §§ 32.015, 61.34(3)(b). In particular, § 32.015 provides that "[p]roperty may not be acquired by condemnation to establish or extend a recreational trail; a bicycle way, as defined in [WIS. STAT. §] 340.01(5s); a bicycle lane, as defined in [§] 340.01(5e); or a pedestrian way, as defined in [WIS. STAT. §] 346.02(8)(a)." Likewise, § 61.34(3)(b) imposes similar limitations directly on a village board's condemnation powers, including its power to acquire property for streets. *See* § 61.34(3)(a) ("*Except as provided in par. (b)*, the village board may acquire property … for … streets …." (emphasis added)).

¶25 As noted earlier, the primary issue in this case is whether a sidewalk is a "pedestrian way" as that term is used in both WIS. STAT. §§ 32.015 and 61.34(3)(b). Because both of those statutes employ the definition of "pedestrian way" provided in WIS. STAT. § 346.02(8)(a), we shift our focus to that statute.

¶26 WISCONSIN STAT. § 346.02(8)(a) defines a "pedestrian way" as "a walk designated for the use of pedestrian travel." This plain language is both simple and broad, and it does not place any limitations on where such "a walk" for "pedestrian travel" might be located. Thus, a sidewalk appears to fall within this general definition because a sidewalk is a "walk" designated for "pedestrian travel." *See* WIS. STAT. § 340.01(58) ("'Sidewalk' means that portion of a highway between

11

the curb lines, or the lateral lines of a roadway, and the adjacent property lines, constructed for use of pedestrians."); WIS. STAT. § 66.0907(1) ("[A] sidewalk [may be placed] on either or both sides of [a] street. The sidewalk shall be for the use of persons on foot …."); *Sidewalk*, WEBSTER'S THIRD NEW INT'L DICTIONARY (unabr. 1993) (defining "sidewalk" as "a walk for foot passengers usu[ally] at the side of a street or roadway").

¶27    The Village nevertheless argues—consistent with the circuit court's decision—that a sidewalk cannot constitute a pedestrian way because such an interpretation would create surplusage in WIS. STAT. § 346.02(8). The Village points out that § 346.02(8)(a) contains more language than simply the general definition of "pedestrian way" and that this other language references both "sidewalks" and "pedestrian ways." Based on those references, the Village insists that a sidewalk must be different from a pedestrian way because "[t]here is no way to reconcile the use of both terms within [§ 346.02(8)] without creating surplusage."

¶28    WISCONSIN STAT. § 346.02(8) provides in relevant part:

> (a) All of the applicable provisions of this chapter pertaining to highways, streets, alleys, roadways and *sidewalks* also apply to *pedestrian ways*.…
>
> (b) Public utilities may be installed either above or below a pedestrian way, and assessments may be made therefor as if such *pedestrian way* were a highway, street, alley, roadway or *sidewalk*.

(Emphasis added.) Thus, the Village is correct that § 346.02(8) employs both the term "sidewalk" and the term "pedestrian way" in two separate sentences and in

close proximity to one another.[7] Although, in certain circumstances, the use of two similar terms in the same sentence might suggest the terms have wholly distinct meanings, we conclude that these provisions contain no surplusage if the term pedestrian way is interpreted to include sidewalks.

¶29 As Sojenhomer correctly observes, the general definition of pedestrian way in WIS. STAT. § 346.02(8)(a) is broader than the definition of a sidewalk because a pedestrian way can—but need not—be adjacent to a roadway. In other words, the term pedestrian way includes both: (1) sidewalks—i.e., walks adjacent to a roadway for the use of pedestrian travel, *see* WIS. STAT. § 340.01(58); and (2) all other walks designated for pedestrian travel that are not adjacent to a roadway, such as a walking path through a parcel of property.

¶30 With this understanding in mind, it becomes clear that interpreting the term "pedestrian way" to include a "sidewalk" does not create surplusage in WIS. STAT. § 346.02(8)(a). Section 346.02(8)(a) provides in plain terms that "[a]ll of the applicable provisions of [WIS. STAT. ch. 346] pertaining to highways, streets, alleys, roadways and sidewalks also apply to pedestrian ways." Thus, under para. (a), provisions pertaining to sidewalks in ch. 346 also apply to all pedestrian ways.[8] Because the term pedestrian ways is broader than the term sidewalks, the inclusion

---

[7] Sojenhomer argues that the first sentence of WIS. STAT. § 346.02(8)(a) "cannot be imposed onto [WIS. STAT. §] 32.015" because the first sentence applies only within WIS. STAT. ch. 346. In other words, Sojenhomer suggests that we cannot consider the first sentence of § 346.02(8)(a) when interpreting the meaning of "pedestrian way." We disagree. Although the first sentence of § 346.02(8)(a) refers to "provisions of this chapter," nothing in that sentence limits our ability to consider it when interpreting the term "pedestrian way." Furthermore, we must interpret "pedestrian way" in the context in which it is used. *See Town of Rib Mt. v. Marathon County*, 2019 WI 50, ¶9, 386 Wis. 2d 632, 926 N.W.2d 731. Both the first sentence of § 346.02(8)(a) as well as § 346.02(8)(b) provide relevant context for determining the meaning of "pedestrian way."

[8] We note that WIS. STAT. ch. 346 contains several provisions that specifically pertain to sidewalks. *See, e.g.*, WIS. STAT. §§ 346.804, 346.805, 346.807.

of the term sidewalks in para. (a) makes the provisions pertaining to sidewalks in ch. 346 applicable to all pedestrian ways that are not sidewalks. Put differently, if the word "sidewalks" were omitted from para. (a), then the provisions pertaining to sidewalks in ch. 346 would *not* apply to pedestrian ways that are not sidewalks. Accordingly, the term "sidewalks" still serves a necessary function even though the term "pedestrian ways" includes sidewalks.

¶31     For similar reasons, interpreting the term pedestrian ways to include sidewalks does not create surplusage in WIS. STAT. § 346.02(8)(b). Section 346.02(8)(b) states that "[p]ublic utilities may be installed either above or below a pedestrian way, and assessments may be made therefor as if such pedestrian way were a highway, street, alley, roadway or sidewalk." Paragraph (b) therefore allows assessments to be made for the purpose of installing public utilities above or below a pedestrian way as if the pedestrian way were a sidewalk. Again, because the term pedestrian way is broader than the term sidewalk, the term sidewalk in para. (b) serves the purpose of permitting a pedestrian way that is *not* a sidewalk to be treated as if it were sidewalk for assessment purposes. Like para. (a), the term sidewalk in para. (b) could not be omitted without changing the meaning of the statutory language.

¶32     Of course, we recognize that there is some overlap in WIS. STAT. § 346.02(8) by interpreting the term pedestrian way to include sidewalks, but such

14

overlap does not create surplusage or render any language meaningless.[9] *See State v. Derenne*, 102 Wis. 2d 38, 46-47, 306 N.W.2d 12 (1981) (concluding that although the court's "construction of [the terms 'marijuana' and 'tetrahydrocannabinols' in WIS. STAT. §] 161.14(4) … results in some 'statutory overlap,'" the court's "construction does not render the term 'marijuana' meaningless"). Indeed, as just explained, neither the term sidewalk nor the term pedestrian way could be omitted from the first sentence of § 346.02(8)(a) or from para. (b) without changing the meaning of those provisions. Accordingly, each term has a textual function in those sentences, such that neither term is mere surplusage.[10] *See Milwaukee Dist. Council 48*, 385 Wis. 2d 748, ¶17 ("Neither [term] is left without a textual function and every word is given meaning.").

¶33     The Village also argues that if the legislature had intended to prohibit the use of condemnation for acquiring property to establish or extend a sidewalk, it

---

[9] One need look no further than WIS. STAT. § 346.02(8) to see that statutes sometimes contain terms that, by definition, overlap in some manner. Both § 346.02(8)(a) and (b) use the terms "highway," "street" and "alley" in the same sentence. A "highway" is defined as "all public ways and thoroughfares and bridges on the same." WIS. STAT. § 340.01(22). "Street," in turn, is defined as "every *highway* within the corporate limits of a city or village except alleys." Sec. 340.01(64) (emphasis added). Likewise, "alley" is defined as "every *highway* within the corporate limits of a city, village or town primarily intended to provide access to the rear of property fronting upon another highway and not for the use of through traffic." Sec. 340.01(2) (emphasis added). Therefore, both a "street" and an "alley" are a "highway."

[10] The Village's interpretation of "pedestrian way" suggests that a pedestrian way can never be adjacent to a roadway because it would then be a "sidewalk." This interpretation, however, appears to conflict with another statute that employs WIS. STAT. § 346.02(8)(a)'s definition of "pedestrian way" in the context of highway construction. *See* WIS. STAT. § 84.01(35)(a)2., (b). Pursuant to § 84.01(35)(b), the Department of Transportation must, except in certain circumstances, "give due consideration to establishing bikeways and pedestrian ways in all new highway construction and reconstruction projects funded in whole or in part from state funds or federal funds appropriated under [WIS. STAT. §] 20.395 or 20.866." The use of the term "pedestrian way" in this statute suggests that a pedestrian way *can be* part of a highway.

would have explicitly included the term sidewalk in WIS. STAT. § 32.015. We disagree. As noted earlier, the general definition of "pedestrian way" is broad and plainly includes sidewalks. The legislature therefore had no need to include the term sidewalk in § 32.015 because the inclusion of the term pedestrian way already made § 32.015 applicable to sidewalks.[11]

¶34 Moreover, the Village provides no basis for us to "assume" the legislature would have explicitly included the term sidewalk in WIS. STAT. § 32.015 if it intended to impose § 32.015 on sidewalks. Importantly, such an assumption is contrary to our interpretative rules for a condemnation statute. In particular, we must strictly construe a condemnor's power, and we must liberally construe condemnation statutes that favor landowners. *See Standard Theatres*, 118 Wis. 2d at 742-43. Here, § 32.015 favors landowners because it prohibits the use of condemnation for acquiring a landowner's property to establish or extend certain physical conditions, such as a pedestrian way. *See* § 32.015. We must therefore liberally construe, albeit within reason, the meaning of the term "pedestrian way" in that statute. *See Standard Theatres*, 118 Wis. 2d at 743.

¶35 The Village also appears to argue that because a sidewalk is, by statutory definition, part of a highway, WIS. STAT. § 32.015 does not prohibit the use of condemnation to establish or extend a sidewalk because the sidewalk would, by definition, widen the existing highway, which is generally permissible. *See* WIS. STAT. §§ 32.05 and 61.34(3)(a). The Village therefore suggests that it could use the

---

[11] We recognize that some of the enumerated items in WIS. STAT. § 32.015 could conceivably overlap. For instance, certain walking paths might meet the definition of both a "recreational trail" and a "pedestrian way." Unlike sidewalks, however, nothing in the statutory language suggests that *all* recreational trails would qualify as a "pedestrian way."

power of condemnation to expand Highway G and include a sidewalk in that expansion.

¶36    To the extent the Village is attempting to argue that its power of condemnation for highways and streets is unconstrained by WIS. STAT. §§ 32.015 and 61.34(3)(b), we disagree.  As we explained earlier, a village board's power to use condemnation to establish a street or a highway is limited by both of those statutes.  *See* § 61.34(3)(a) ("*Except as provided in par. (b)*, the village board may acquire property, real or personal, within or outside the village, for … streets ….  Condemnation shall be as provided by [WIS. STAT.] ch. 32." (emphasis added)).

¶37    Furthermore, if the Village were correct and WIS. STAT. §§ 32.015 and 61.34(3)(b) did not constrain a village board's condemnation powers with regard to some highways and streets, then at least part of those statutes would be rendered superfluous.  Sections 32.015 and 61.34(3)(b) prohibit a village board from using the power of condemnation to establish "a bicycle lane, as defined in [WIS. STAT. §] 340.01(5e)."  A bicycle lane is defined as "that portion of a roadway set aside by the governing body of any … village … for the exclusive use of bicycles … and so designated by appropriate signs and pavement markings." Sec. 340.01(5e).  A bicycle lane is therefore always a part of a roadway, which is always part of a highway.  *See* § 340.01(54) ("'Roadway' means *that portion of a highway* between the regularly established curb lines or that portion which is improved, designed or ordinarily used for vehicular travel, excluding the berm or shoulder." (emphasis added)).  Although the width of a highway would increase if a bicycle lane were established or extended on the highway, §§ 32.015 and 61.34(3)(b) plainly prohibit a village board from doing so.  Accordingly, we reject

17

the Village's suggestion that its condemnation powers are not limited under § 32.015 or § 61.34(3)(b) if the Village is "widening" a highway or street.

¶38    In sum, we conclude that the term "pedestrian way" in WIS. STAT. § 32.015 includes sidewalks because a sidewalk is a walk designated for pedestrian travel, *see* WIS. STAT. §§ 340.01(58) and 66.0907(1), and it therefore falls within the general definition of "pedestrian way" in WIS. STAT. § 346.02(8)(a).[12]  Such an

---

[12] Sojenhomer argues that WIS. STAT. § 32.015's legislative history also supports its interpretation of that statute.  Sojenhomer points out that there were bills introduced into both the assembly and senate recommending that § 32.015 (and all other statutes with analogous language) be amended to remove the prohibition against using condemnation to establish or extend a bicycle lane and to exclude sidewalks from the definition of pedestrian way:

> **32.015 Limitations.**    Property may not be acquired by condemnation to establish or extend a recreational trail; a bicycle way, as defined in s. 340.01(5s)~~; a bicycle lane, as defined in s. 340.01(5e)~~; or a pedestrian way, as defined in s. 346.02(8)(a), that is not a sidewalk, as defined in s. 340.01(58).

2017 A.B. 967; 2017 S.B. 794.  Sojenhomer further observes that the Legislative Reference Bureau explained the amendments as "eliminat[ing] the prohibition against certain entities, such as a county board, a village board, or the Department of Transportation, using the power of condemnation to acquire land or interests in land for the purpose of establishing or extending bicycle lanes or *certain pedestrian ways*."  ***Id.*** (emphasis added).  Although those amendments were never enacted, Sojenhomer nevertheless argues that they show the legislature recognized that the term pedestrian way includes sidewalks.

The circuit court rejected this argument, concluding that multiple inferences could be drawn from the proposed legislation that had never been enacted.  We agree that this legislative history could be interpreted in favor of either party's interpretation.  On the one hand, such a proposal could suggest that the legislature interpreted the term "pedestrian way" to include sidewalks and that it intended that result by refusing to enact the amendments.  On the other hand, the failed amendments could suggest that the legislature believed the term "pedestrian way" did not include sidewalks, and, thus, the amendments were unnecessary.  Accordingly, we do not rely on these proposed amendments to support our interpretation of WIS. STAT. § 32.015.

interpretation does not create surplusage in either § 346.02(8)(a) or (b)—even though those provisions reference both sidewalks and pedestrian ways—because neither term could be omitted without changing the meaning of para. (a) or (b). Our interpretation of "pedestrian way" in § 32.015 is further buttressed by the rule that we must liberally construe condemnation statutes that favor property owners.[13]

## II. Application of WIS. STAT. §§ 32.015 and 61.34(3)(b) to the undisputed facts of this case

¶39     The Village argues that even if a sidewalk is a pedestrian way under WIS. STAT. §§ 32.015 and 61.34(3)(b), the circuit court properly granted summary judgment in its favor because the undisputed facts show that the Village did not acquire Sojenhomer's property "only for" establishing a sidewalk. The Village observes that the improvements to Highway G included: "a reconstructed roadway, on-street parking, installation of improved crosswalks, a new channelizing island at the State Highway 42 intersection, buried utilities, street lighting, curb, gutter and sidewalk." The Village argues that it has the power to acquire property for these roadway purposes.

---

Regardless, we have concluded that the meaning of "pedestrian way" in WIS. STAT. §§ 32.015 and 61.34(3)(b) is unambiguous because one could not reasonably interpret the general definition of pedestrian way in WIS. STAT. § 346.02(8)(a) as not including sidewalks. *See State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶47, 271 Wis. 2d 633, 681 N.W.2d 110 (a statute is ambiguous if its "language *reasonably* gives rise to different meanings"). Thus, we need not consult extrinsic sources of interpretation, such as legislative history. *See id.*, ¶46.

[13] Sojenhomer makes an alternative argument that WIS. STAT. § 32.015 prohibits the Village from condemning the property because the Village seeks to extend "a recreational trail and/or a pedestrian way" located nearby and known as Bird Trail. We need not reach this issue, however, because we conclude WIS. STAT. §§ 32.015 and 61.34(3)(b) prohibit the Village from acquiring Sojenhomer's property to establish a pedestrian way. *See Turner v. Taylor*, 2003 WI App 256, ¶1 n.1, 268 Wis. 2d 628, 673 N.W.2d 716 (court of appeals need not address all issues raised by the parties if one is dispositive).

¶40　　In response, Sojenhomer argues that Simon's deposition testimony refutes the Village's claims that acquisition of Sojenhomer's property was necessary to accommodate all of the improvements to Highway G. Sojenhomer points out that Simon testified that the only highway purpose for acquiring Sojenhomer's property through condemnation was to establish a sidewalk and that if not for the sidewalk, the Village would have placed the street lighting elsewhere.

¶41　　As an initial matter, we recognize that the parties each seem to frame the relevant inquiry—i.e., the purpose for which Sojenhomer's property was acquired by condemnation—in a different manner. The Village appears to suggest that we may consider all of the improvements to the highway reconstruction project, regardless of whether Sojenhomer's property was needed for those improvements. In contrast, Sojenhomer seems to argue that we should consider only the Village's reasons for acquiring Sojenhomer's property. Neither party provides an explanation for its respective position; therefore, we turn to the relevant statutes for guidance.

¶42　　As discussed earlier, WIS. STAT. § 32.015 provides, in relevant part, that "[p]roperty may not be acquired by condemnation to establish or extend … a pedestrian way." Likewise, WIS. STAT. § 61.34(3)(b) employs similar language: "The village board may not use the power of condemnation to acquire property for the purpose of establishing or extending … a pedestrian way …." Based on the language of these statutes, we agree with Sojenhomer's approach that the relevant inquiry is whether the Village is "us[ing] the power of condemnation to acquire [Sojenhomer's] property for the purpose of establishing or extending … a pedestrian way." *See* § 61.34(3)(b); *see also* § 32.015.

¶43　　Here, the undisputed facts demonstrate that before the Village began the process of condemning Sojenhomer's property, the Village planned to establish

20

a sidewalk on the east side of Highway G, including on Sojenhomer's property. Simon stated in a 2016 email that

> [t]here is no continuous sidewalk for pedestrians. Currently pedestrians need to share the roadway with motorized vehicles and bicycles. During peak season the effective width of the roadway is narrowed due to parking on both sides of the roadway which further reduces the area available for pedestrians. This is a safety issue that the Village is looking to correct with the project.

Simon confirmed in his deposition that the Village planned to establish a sidewalk, explaining that a sidewalk was to be installed on the east side of Highway G from Bird Trail until Highway 42. He also confirmed that one of the primary reasons for the project was to improve "walkability" and that the sidewalk would be for pedestrian travel. Thus, the undisputed facts show that the Village was seeking to establish a "pedestrian way" on the east side of Highway G. *See* WIS. STAT. §§ 32.015, 61.34(3)(b), 346.02(8)(a).

¶44 The undisputed facts also demonstrate that the Village was seeking to acquire Sojenhomer's property through condemnation for the purpose of establishing this pedestrian way. Simon explained in his deposition that a portion of the planned sidewalk would be on the property acquired from Sojenhomer. He also confirmed that the Village sought to acquire the property to create "a little more room for pedestrians to walk." Given these facts, no reasonable fact finder could find or infer that the Village did not use the power of condemnation to acquire Sojenhomer's property for the purpose of establishing a pedestrian way. *See* WIS. STAT. § 61.34(3)(b); *see also* WIS. STAT. § 32.015.

¶45 The Village's focus on all of the improvements to Highway G is misplaced. The plain language of WIS. STAT. § 32.015 prohibits the condemnation

21

of property "to establish … a pedestrian way." *See id.* Although the Village's acquisition of Sojenhomer's property might have been part of a broader reconstruction project to Highway G, the undisputed facts show that, regardless of the constellation of improvements made to Highway G, the Village still acquired Sojenhomer's property through condemnation "to establish" a pedestrian way. Such an acquisition violates the plain language of WIS. STAT. §§ 32.015 and 61.34(3)(b).

¶46 The Village also argues that the condemnation of Sojenhomer's property cannot be invalidated because the Village was seeking to address numerous safety concerns and "the Village would still need to establish some other safety mechanism or barrier to separate vehicular and pedestrian traffic." We have no reason to doubt this assertion or the efficacy of the project. We are tasked, however, only with determining whether the condemnation of Sojenhomer's property, under the facts here, violated Wisconsin law, and the Village fails to cite any legal authority supporting an argument that its safety assertion is relevant to that analysis. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (we need not address an argument that is unsupported by legal authority). In any event, we note that neither WIS. STAT. § 32.015 nor WIS. STAT. § 61.34(3)(b) create any exceptions, much less an exception for safety concerns.[14] Thus, we reject the Village's suggestion that it had the right to condemn Sojenhomer's property despite that action violating §§ 32.015 and 61.34(3)(b).

---

[14] We recognize that some might disagree with the policy behind prohibiting the use of condemnation to establish pedestrian ways. Nonetheless, we must "defer to the policy choices of the legislature[,] and we assume that the legislature's intent is expressed in the statutory language it chose." *Warehouse II, LLC v. DOT*, 2006 WI 62, ¶14, 291 Wis. 2d 80, 715 N.W.2d 213. Because the plain language of WIS. STAT. §§ 32.015 and 61.34(3)(b) prohibit the condemnation at issue in this case, we must enforce those statutes as written.

**CONCLUSION**

¶47    We conclude that the circuit court erred by granting summary judgment in favor of the Village. The undisputed facts demonstrate that the Village used the power of condemnation to acquire Sojenhomer's property to establish a pedestrian way in violation of WIS. STAT. §§ 32.015 and 61.34(3)(b). Summary judgment should have therefore been granted in Sojenhomer's favor. We reverse and remand for further proceedings consistent with this opinion.[15]

*By the Court.*—Order reversed and cause remanded for further proceedings.

---

[15] Neither party discusses the remedy for a violation of WIS. STAT. § 32.015, either generally or in the context of this case; therefore, we do not address or express an opinion on that issue.